MILLER, Judge
(dissenting).
It appears to me that the majority has required the right-of-way vehicle to yield to left turn signals of an oncoming vehicle. Neither the statutes nor the jurisprudence ■ require this result.
I agree that “the most plausible explanation is that Ortego saw the bus turn but was simply going too fast to avoid the accident.” But the proximate cause of this accident was the negligence of the left turning bus driver in failing to see the oncoming right-of-way vehicle, which had preempted the intersection.
The gross negligence of the left turning bus driver continued until impact notwithstanding the warnings of some of the 55 children who were passengers. Had the left turning bus driver looked for right-of-way oncoming traffic when he was one-quarter, one-half or even three-quarters into his improperly made left turn, he could have stopped and thereby avoided running into Ortego’s vehicle. At any of these times, had he looked for right-of-way traffic (which was seen by some of his passengers), he could have stopped. There is no suggestion that the bus driver applied brakes before impact. Had he stopped when the front of his bus was six feet off the west side of the north-south highway, the Ortego vehicle would *380 then have been able to avoid being struck by the bus.
Ortego could not turn to the left side of the road because two vehicles were waiting behind the bus. Had he stayed in his proper lane, he would have struck the bus broadside and defendants would be defending substantial claims from the bus passengers. By sacrificing his own life, Or-tego substantially reduced defendants’ exposure. I would not excuse the negligence of the left turning bus driver.
The majority relies on the 191 feet of skidmarks to find that the Ortego youth was traveling between 70 and 80 miles per hour in this 60 mph zone. The trial court stated:
“The evidence is not convincing that (Ortego’s) speed was such as to have been a proximate cause of the accident. Too, he apparently was keeping a proper lookout as his braking pattern indicates a normal braking reaction rather than a panic attempt to stop. His initial brake marks were broken. This leads the Court to the conclusion that he saw the bus as it approached the intersection, began to brake his car, believed from the momentary stop that it would respect his superior right of way, which, under the law he had a right to expect, and applied the brakes forcibly and too late to avoid the accident when the bus continued across the southbound lane of travel.”
This analysis is entirely supported by the evidence. We have several photographs of the skidmarks. A great deal of testimony is concerned with these skid-marks. The expert witness did not see the skidmarks. He was employed only a few days before trial. He based his opinion on some, of the reports and the photographs.
When the expert was informed that the 191 feet of skidmarks included those marks under the Ortego vehicle, he changed his estimate of Ortego’s speed before brakes were applied from 73.4 mph to 71 mph.
This reconstructed speed presumed that Ortego was attempting to make a panic stop at the first moment that he ascertained that the bus would ignore his right-of-way. The trial court, correctly I think, held that Ortego was not required to assume that the bus driver, after having stopped to yield to right-of-way traffic, would then continue in a left turn when Ortego could not avoid the accident. Or-tego’s first reaction was a normal braking reaction. The expert did not adjust his reconstructed speed for this factor.
Another variable used by the expert in arriving at Ortego’s speed, was Ortego’s estimated speed at impact. He set this at 35 mph based on the extent of damage shown in the photographs of Ortego’s vehicle. I do not find allowance made for the fact that some of this damage resulted from the school bus moving forward at five miles per hour at impact. A review of the photographs shows that the entire front of the school bus nosed into the driver’s side of Ortego’s vehicle from the left front wheel to the left rear wheel. The damage from wheel to wheel is equal. The expert did not explain to my satisfaction that all of this damage resulted from Orte-go’s momentum.
I believe that I differ with the majority in the value to be assigned to the right-of-way. If the right-of-way is not going to be recognized, everyone must not only drive defensively, but must assume that his right-of-way will be ignored. The result will be mass confusion and an increase in accidents.
The trial cohrt is entirely correct. I find no manifest error, and respectfully dissent.
On Application for Rehearing.
En Banc. Rehearing denied.
FRUGÉ, J., votes for rehearing.
TATE, J., not participating.
MILLER, J., votes for rehearing.